IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HERBERT FLORES-TORRES,

    Petitioner,

v.

ERIC H. HOLDER, JR., in his official capacity as United States Attorney General,

    Respondent.

No. C 08-01037 WHA
No. C 09-03569 WHA

**ORDER GRANTING ENTITLEMENT TO COSTS AND DENYING ATTORNEY'S FEES**

## INTRODUCTION

After a bench trial, an order on December 23, 2009, declared petitioner to be a United States citizen and judgment was entered in petitioner's favor. Petitioner now moves for an award of attorney's fees pursuant to the fees provision of the Equal Access to Justice Act, 28 U.S.C. 2412(d)(1)(A). Petitioner also moves pursuant to Rule 54(d)(1) for review of the clerk's taxation of costs. For the reasons stated below, petitioner's entitlement to taxation of costs sought on review is **GRANTED IN PART**, but his entitlement to attorney's fees is **DENIED**.

## STATEMENT

Petitioner was a native and citizen of El Salvador who moved to the United States to live with his mother while still a child. In 2005, petitioner was convicted of being a felon in possession of a firearm in violation of California Penal Code § 12021(a)(1). In October 2006,

1  while petitioner was incarcerated for this offense, ICE filed an immigration detainer and placed
2  him in removal proceedings, charging him with being an alien convicted of an aggravated
3  felony. 8 U.S.C. 1227(a)(2)(A)(iii). The immigration judge ruled that petitioner was *not* a
4  United States citizen and ordered his removal to El Salvador. The Board of Immigration
5  Appeals affirmed the immigration court's decision. Petitioner then appealed the order of
6  removal to the court of appeals.

7  The Ninth Circuit determined that there were material issues of fact pertaining to
8  whether petitioner was a United States citizen. It stayed its consideration of petitioner's appeal
9  and transferred the issue of petitioner's citizenship to the undersigned pursuant to 8 U.S.C.
10 1252(b)(5)(B) for a hearing and decision on petitioner's nationality claim. The declaratory
11 proceeding on petitioner's citizenship claim then proceeded to trial, after which a December 23
12 order determined that petitioner became and remains a United States citizen pursuant to
13 Immigration and Nationality Act Section 321(a), former 8 U.S.C. 1432(a), upon the
14 naturalization of his mother on September 15, 1995.

15 Section 321(a) stated in its entirety:

> (a)  A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
>
> (1)  The naturalization of both parents; or
>
> (2)  The naturalization of the surviving parent if one of the parents is deceased; or
>
> (3)  The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4)  Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5)  Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized

2

>under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

Section 321 was repealed in 2000, but it was undisputed that its later repeal had no bearing on the issue of whether petitioner automatically derived citizenship pursuant to its requirements on September 15, 1995, when it was still in effect. It was also undisputed that on September 15, 1995, petitioner met most of the requirements for derivative citizenship as a child born out of wedlock under Section 321(a)(3). The only dispute was whether petitioner's "paternity had been established by legitimation" at the time of his mother's naturalization. In particular, the parties disputed what it meant to "establish paternity by legitimation" for purposes of the INA.

Because this phrase was not explicitly defined by the statute, the December 23 order looked to the plain meaning of the phrase, the legislative history and Ninth Circuit precedent. In *Matter of Rowe*, 23 I&N Dec. 962, 965–66 (2006), a native of Guyana sought derivative citizenship under Section 321(a) and argued that his paternity had not been established by legitimation. The Board of Immigration Appeals held in *Rowe* that because all children had been legitimated by Guyanese statute, a child was deemed legitimated for all purposes, including Section 321(a). The immigration court and BIA relied on *Rowe* in denying petitioner's claim in the present matter.

The December 23 order disagreed with *Rowe* on the grounds that the BIA did not consider the distinction between whether a child was legitimated in general and whether a child's paternity was established *by* legitimation as required by Section 321(a). It determined that because a statute must be interpreted to give each word some operative effect, the word "by" indicated that legitimation must be the means through which paternity was established. Paternity established in some other way was insufficient to defeat citizenship. Based on a review of the legislative history, the December 23 order determined that in employing the phrase "paternity of the child is established by legitimation," Congress intended that paternity of the born-out-of-wedlock child be established by legitimation, which required the marriage of

3

the parents subsequent to the child's birth. The final record was clear that petitioner's father never married his mother, which alone was sufficient to dispositively determine that petitioner qualified for derivative citizenship pursuant to Section 321(a).

**ANALYSIS**

**1.    COSTS.**

Petitioner filed a bill of costs in this matter seeking $16,481.14 in costs. The clerk subsequently taxed costs in the amount of $2,404.35. The clerk disallowed all interpreter and translation costs sought by petitioner, totaling $12,083.14. The clerk also disallowed $416.40 in transcript fees, and $1497.15 in witness fees. Petitioner seeks review of the taxation of costs as provided by Rule 54(d)(1).

Courts cannot authorize costs that are not authorized under 28 U.S.C. 1920, although they are permitted to interpret the meaning of the phrases used in Section 1920. *Alfex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990). Respondent incorrectly asserts that Section 1920(6) only allows compensation of "special interpretation services under section 1828 of this title" (Respondent's Br. at 2). Section 1920(6) also explicitly allows compensation of "court appointed experts" and "compensation of interpreters." Although the Ninth Circuit has not addressed this issue, other courts have held that "compensation of interpreters" includes costs related to translation of documents so long as they were necessarily incurred. *BDT Products, Inc. v. Lexmark*, 405 F.3d 415, 419 (6th Cir. 2005); *Quy v. Air America, Inc.* 667 F.2d 1059, 1065 (D.C.Cir. 1981); *Competitive Technologies v. Fujitsu Ltd.*, 2006 WL 6338914 (N.D.Cal. 2006). This order agrees that this is the most reasonable interpretation of Section 1920(6).

This order finds that the translation costs sought by petitioner were necessary. One of the issues at trial was whether petitioner had been legitimated under Salvadoran law. This required translations of numerous foreign law documents which were of material aid to the Court in resolving this case. Petitioner is therefore entitled to taxation of costs for translations.

Respondent further objects to petitioner's sought "rush" rates for certain translations. Because of the undersigned's busy trial calendar, this case was tried in five court days over

4

1  three and a half weeks. Petitioner obtained the "rushed" translations in question because he
2  sought to depose his own expert to preserve his testimony due to his expert's unavailability on
3  the scheduled trial dates. At a discovery dispute hearing two days before the scheduled
4  deposition, the trial dates were re-arranged so as to allow petitioner's expert to testify live. By
5  then, petitioner had already incurred the "rushed" costs. Because these "rushed" transcripts
6  were ordered to accommodate the discontinuous trial schedule necessitated by the
7  undersigned's calendar, their cost should also be taxed.

8       Respondent next objects that the interpretation costs sought by petitioner are excessive
9  because they include $34.80 in mileage costs and because the interpreter was present in court
10 both on November 16 and November 18 but was only used on November 18. Petitioner is
11 correct that it was necessary for the interpreter to be present on both days because the schedule
12 may have proceeded such that the interpreter would have been necessary beginning November
13 16. Additionally, this order holds that "compensation of interpreters" under Section 1920(6)
14 may reasonably include mileage costs. Petitioner is therefore entitled to have these costs taxed.

15      Respondent also objects to the taxation of transcript fees. By statute, fees of the court
16 reporter for all or any part of the stenographic transcript necessarily obtained for use in the case
17 are recoverable. 28 U.S.C.1920(2). The local rules expressly permit recovery of costs of
18 transcripts "necessarily obtained for an appeal" or if a statement by a judge from the bench is to
19 be reduced to a formal order; otherwise, without prior court approval or stipulation by the
20 parties, "[t]he cost of other transcripts is not normally allowable." Civ. L.R. 54-3(b). While not
21 normally allowable, this order holds that petitioner is entitled to the cost of all hearing
22 transcripts in this matter because they were "necessarily obtained." 28 U.S.C.1920(2). The
23 parties were required to file proposed findings of fact and conclusions of law, and a November
24 25 order explicitly required specific citation to the reporter's transcript (November 25 order at
25 1). The transcripts were necessarily obtained for this purpose, and petitioner is entitled to
26 recover these costs.

27      Respondent also objects to the travel and lodging expenses of plaintiff's expert witness
28 Jose Tercero. Reasonable travel and lodging expenses may be reimbursed in a cost award

5

pursuant to Section 1920(3). Respondent argues that it is probable that the witness's air fare was not the lowest available. Petitioner's counsel, however, has submitted a sworn declaration that no lower fare was available (White Decl. at 2). Respondent does no more than speculate that this was incorrect.

Respondent also argues that Witness Tercero's stay was extended beyond what was necessary for trial. Witness Tercero arrived two days prior to his scheduled testimony and two days after. Petitioner's counsel has declared under oath that this was necessary to allow petitioner's counsel to meet with Witness Tercero before trial, as well as for Witness Tercero to help petitioner' counsel prepare to cross-examine respondent's expert witness. On that basis, petitioner should be awarded all the travel and lodging costs submitted for Witness Tercero.

Finally, respondent objects that two items for which petitioner seeks award of costs are described with insufficient particularity. *First*, respondent objects to the first item on the bill titled "Translation," which seeks $863.50 for "Written translation (3,925 words)" on the grounds that it was unclear what documents were translated with regards to this item. *Second*, with regards to the bill dated October 27, 2009, respondent objects to the unspecified "project management fee" in the amount of $320, on the grounds that insufficient information was provided to determine whether it was necessary to the case. This order agrees. No later than **NOON ON MAY 18, 2010**, petitioner may submit an elaborated explanation of these two items. The other $15,297.64 in costs sought by petitioner are **GRANTED**.

**2.     ATTORNEY'S FEES.**

EAJA provides that a party in a civil action against the United States is entitled to reasonable attorney's fees if: (i) the claimant is a "prevailing party," (ii) the government's position was not "substantially justified," (iii) no "special circumstances makes an award unjust," and, (iv) the fee application is timely submitted to the court within thirty days of final judgment in the action. 28 U.S.C. 2412(d)(A)–(B); *see INS v. Jean*, 496 U.S. 154, 158 (1990). Respondent contends that petitioner is not entitled to attorney's fees because the government's position was substantially justified. The government's position is "substantially justified" in

this context where it "has a reasonable basis in law and fact." *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005).

The Ninth Circuit has held that in evaluating whether the government's position is reasonable, the government's position encompasses not only the litigation position of the litigating agency, but also the administrative decisions upon which the present action is based. *Thangaraja*, 428 F.3d at 873–74. The government's position in this matter therefore includes its litigation position as well as the BIA and IJ decisions ordering petitioner's removal.

The "substantially justified" standard is met when "reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The government need not be "justified to a high degree." *Ibid.* Although it did not prevail, this order holds that the government's position in this matter nevertheless was substantially justified. The government's position in this matter relied on the BIA's decision in *Rowe*, which as noted above, also interpreted the meaning of legitimation in Section 321(a). Although the December 23 order disagreed with *Rowe*, the government was reasonable in relying upon it, especially in this largely unsettled area of the law which had not previously been addressed in this context by a district court.

In this circumstance, petitioner is not entitled to attorney's fees under EAJA. Petitioner's motion for attorney's fees is therefore **DENIED**.

## CONCLUSION

For the reasons stated above, petitioner's entitlement to taxation of costs sought on review is **GRANTED** in the amount of $15,297.64. No later than **NOON ON MAY 18, 2010**, petitioner may submit an elaborated explanation for the additional $1,183.50 that he seeks. His entitlement to attorney's fees is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 11, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7